1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUTRICIA LANE THOMPSON,

               Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

             Defendant.

Case No.  1:22-cv-00364-BAM

**ORDER REGARDING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

(Doc. 10)

## **INTRODUCTION**

      Plaintiff Lutricia Lane Thompson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.  The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.  (Docs. 10-12.)[1]

      Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

---

[1]    The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 2, 7-8.)

record and is based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on November 27, 2019.  AR 271-279.[2]  Plaintiff alleged that she became disabled on November 7, 2018, due to bipolar disorder with anxiety, depression, and posttraumatic stress disorder (PTSD).  AR 273.  Plaintiff's application was denied initially and on reconsideration.  AR 91-120.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Vincent A. Misenti held a hearing on April 8, 2021.  AR 51-74.  ALJ Misenti issued an order denying benefits on the basis that Plaintiff was not disabled on May 5, 2021.  AR 121-139.  The Appeals Council vacated the hearing decision and remanded the case to the ALJ for further evaluation of the record and Plaintiff's residual functional capacity.  AR 140-145.  ALJ Misenti held a subsequent hearing on November 23, 2021.  AR 75-90.  ALJ Misenti issued a second order denying benefits on December 23, 2021.  AR 12-34.  Plaintiff sought review of the ALJ's second decision, which the Appeals Council denied, making the ALJ's second decision the Commissioner's final decision.  AR 1-6, 267-270.  This appeal followed.

**April 8, 2021 Hearing Testimony**

The ALJ held a telephonic hearing on April 8, 2021.  AR 51-74.  Plaintiff appeared with her attorney, Terry La Porte.  *Id.*  Alina Sala, an impartial vocational expert, also appeared and testified. AR 68-74.

In response to questions from the ALJ, Plaintiff testified that she was 56 years of age, lives in a house by herself, and has a high school education.  AR 52-53.  Plaintiff stated that she has done some part-time shifts since November 7, 2018, but no work lasting for more than 30 days.  AR 53-54.

Discussing her bipolar disorder, Plaintiff stated that she feels extreme fatigue, depression, anxiety, lethargy, no joy in doing anything, and feels "unable to do the most simple of self-care tasks when it's bad."  AR 54.  Plaintiff testified that she feels heavy and tired, sleeps a lot, has mood swings,

---

[2]    References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

and has "no ambition or desire to do anything." *Id*.  Plaintiff further testified that people, life in general, bills, and life stresses make her anxious.  *Id*.  Plaintiff testified that her mood could shift from minute to minute and that she has approximately four bad days and three good days per week.  AR 55. In discussing her post traumatic stress disorder, Plaintiff said that her symptoms include depression, anxiety, inability to go out into the world, and weekly flashbacks.  AR 55-56.

Plaintiff stated that she has weekly therapy sessions and discussions with a psychiatrist every three months.  AR 56.  She had been seeing her therapist for approximately 2.5 years.  *Id*.  Plaintiff testified that her medication allows her to "do basic tasks" and to self-care, though she noted that she still has "good days and bad days."  AR 57-58.  During the approximately four bad days per week, she cannot go out in public.  AR 58-59.  Her medication is adjusted approximately every six months.  AR 57.

During a typical day, Plaintiff gets up between 7:00 and 9:00, takes her medication, feeds her cats, checks email and Facebook, and makes breakfast.  AR 59.  Plaintiff then watches TV and has lunch.  Plaintiff then usually feels exhausted around 1:00, so she takes a nap and sleeps for approximately two to five hours.  AR 59.  Plaintiff then wakes up, has dinner, and goes to bed around 10:00 to 11:00.  AR 59.  Plaintiff testified that she paints as a hobby and sold a few paintings for around $200 at a craft fair once.  AR 59.  During the craft fair, she had to leave early and needed a friend to help her move the table as she was exhausted.  AR 59-60.  Plaintiff testified that the only places she goes are a gas station, grocery store, and AA recovery meetings approximately five times per week.  AR 60.  Plaintiff also testified that she would have dinners with close friends at her house prior to COVID and would sometimes see outdoor concerts before that became too overwhelming. AR 61.  Plaintiff also testified that on bad days, she is not able to go to AA recovery meetings and outdoor concerts.  AR 63.

In response to questions from her attorney, Plaintiff testified that she was working as an interior designer on a full-time basis until November 2018 but has not tried to go back to work as an interior designer following suicide attempts as it is too stressful.  AR 61-62.  Plaintiff also testified that she did administrative secretarial work at a small real estate firm for three days but quit because she was exhausted, could not function, and felt stressed and anxious.  AR 62.  Plaintiff also did one four-

hour shift in January 2021 at Ross Stores that consisted of her watching training videos.  AR 63.  She quit the Ross Stores position after the shift, as she felt overwhelmed by the employee procedures and level of productivity.  *Id.*

In responding to questions from her attorney about physical restrictions and musculoskeletal problems, Plaintiff testified that she had lower back pain, neck pain, and shoulder pain that prevented her from lifting anything over 20 pounds.  AR 64.  She also testified that she could not reach above her head and needed to take a nap daily for approximately two to five hours.  AR 64-65.  Plaintiff testified that she believes the need to nap is based on depression and fatigue.  AR 65.  Plaintiff further testified that her prescriptions included Abilify for bipolar disorder, Venlafaxine for depression, medication for back, neck, and shoulder problems, and previously Lamictal for bipolar disorder.  AR 65-66.  An overdose with her prescriptions and a natural sleep remedy led to Plaintiff's psychiatric hospitalization in July 2020.  AR 66.  Plaintiff testified that she previously lived with a roommate and was actively looking for a new roommate for rental income, to have company to avoid worsening depression, and to help with household chores.  AR 67.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  AR 67-74.  The VE first summarized Plaintiff's past work as interior design, 142.051-014, where the "SVP is 7, light," and performed at "medium." AR 68.  The ALJ then asked the VE hypothetical questions.  *Id.*  For the first hypothetical, the ALJ asked the VE to consider an individual with at least a high school education, past work as described, and capable of performing a medium range of work.  AR 68.  In this hypothetical, the ALJ limited the individual to understanding, remembering, and carrying out simple, routine, and repetitive tasks; using judgment; making simple work-related decisions; and interacting with the public occasionally.  AR 68.  The VE testified that the individual could not perform the past work.  AR 69.  The VE further testified that there would be jobs that exist in the national economy that this individual could perform.  *Id.*  At the medium level, these jobs would include linen room attendant, cleaner/sweeper, and dining room attendant.  AR 69.  For the second hypothetical, the ALJ asked the VE to consider the restrictions in the first hypothetical and add that the individual would be off task 20 percent of the time and/or miss 2 days of work a month.  AR 69.  The VE opined that the individual could not perform any work.  *Id.*

In examination of the VE, Plaintiff's attorney asked the VE to assume the restrictions in the first hypothetical and to add the restriction that the individual would be limited to occasional bending, stooping, and overhead reaching with the left arm.  AR 69.  The VE testified that the dining room attendant and linen room attendant jobs could still be performed, but the cleaner job would be eliminated under those restrictions.  AR 69-70.  The VE testified that the dining room attendant and linen room attendant positions did not require lifting from the floor or lower levels.  AR 70.

Plaintiff's attorney next asked the VE to assume an individual of Plaintiff's same age, education, and work experience and with restrictions of a light functional capacity with simple and repetitive tasks and occasional public contact.  AR 70-71.  The VE testified that such an individual could not perform past relevant work and that the skills would not be transferable from Plaintiff's past relevant work to other work.  AR 71.

Plaintiff's attorney also asked the VE to assume the restrictions from the first hypothetical and to assume that the individual is limited in concentration.  AR 71-72.  After discussion between the ALJ and VE in which the VE noting that concentration could be vocationally relevant to the individual's ability to be on-task, the VE testified that an individual who would be off-task a third of the time would not be able to perform any jobs.  AR 72.

### November 23, 2021 Hearing Testimony

The ALJ held a second telephonic hearing on November 23, 2021.  AR 77-89.  Plaintiff appeared with her attorney, Terry La Porte.  *Id.*  Luis Mas, an impartial vocational expert, also appeared and testified.  AR 68-74.  The ALJ began by noting that evidence that was previously submitted but not properly exhibited had been added into the file.  AR 77-78.  The ALJ admitted Exhibits 1A through 13F, except for Section C.  AR 78.

In response to questions from the ALJ regarding whether there had been any changes in her condition since the previous hearing, Plaintiff testified that she still dealt with depression and could only function in the world about half the time with the help of therapy, medication, and psychiatric monitoring.  AR 79.  Plaintiff testified that she attends weekly therapy with Janet Black of the Sonora Indian Health Clinic to work on childhood trauma issues and attends AA meetings via Zoom and sometimes in person when she is not too exhausted.  AR 79.  Plaintiff also testified that she had a

5

loose, painful shoulder and cannot pick up anything with her left hand, though doctors had not narrowed down the source of the pain.  AR 80.

In response to questions from her attorney, Plaintiff testified that her depression has worsened and "definitely not gotten better" since the previous hearing, and that during some periods of depression she goes into a dissociative state where she cannot take in new information and goes to sleep.  AR 81.  She testified that she takes long naps during the day and typically has to sleep for around two to four hours.  *Id.*  During these episodes she feels a numbness to the world.  AR 82.  She has experienced this during the four-hour shift she worked at Ross Stores and during some therapy sessions.  AR 82-83.  Plaintiff further testified that her psychiatrist, Dr. Edwards, had increased her Abilify and started her on Desipramine prescriptions but this had not helped with the dissociative episodes.  AR 82.  Dr. Edwards also prescribed Seroquel, which helps Plaintiff with nighttime sleep disturbances but not from exhaustion.  AR 83.  Plaintiff testified that she avoids driving when she feels she might experience a dissociative episode, so avoids driving about three or four days per week.  AR 83.  Plaintiff testified that she has not had suicidal thoughts since April 2021, and views that as an improvement.  AR 83.  Plaintiff stated that she cries "all the time" as a release for feeling overwhelmed.  AR 84.  Plaintiff testified that she was still unable to lift over 20 pounds and is left-handed.  AR 84.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  AR 84-89.  The VE first summarized Plaintiff's past work as interior design, 142.051-014, with SVP 7 and light work.  AR 85.  The ALJ then asked the VE hypothetical questions.  AR 85-87.

For the first hypothetical, the ALJ asked the VE to consider an individual with Plaintiff's past work experience, at least a high school education, able to perform work at all exertional levels, limited mentally to understanding, remembering, and carrying out simple, routine, and repetitive tasks using judgment, limited to simple work-related decisions, and capable of interacting with coworkers and the public occasionally.  AR 85-86.  The VE testified that there would be jobs that exist in the national economy that this individual could perform.  AR 86.  At the medium level, these jobs would include hand packager, store laborer, and small parts assembler.  *Id.*

For the second hypothetical, the ALJ asked the VE to consider the restrictions in the first hypothetical and add that the individual would be off task daily between two and four hours.  AR 86. The VE opined that the individual could not perform any work.  *Id.*  The ALJ then asked the VE to consider that the individual would be off task for only two hours, and the VE testified that the individual would not be employable.  *Id.*  For the third hypothetical, the ALJ asked the VE to consider that such an individual would miss two days of work a month.  AR 87.  The VE testified that the individual could not perform any work.  *Id.*

Plaintiff's attorney then asked the VE hypotheticals.  AR 87-89.  Plaintiff's attorney asked the VE to consider an individual of the same age, education, and work experience as Plaintiff, capability at all exertional levels, limited to simple, routine and repetitive tasks with occasional public and coworker contact, and unable to complete work tasks or maintain a reasonable pace without an unreasonable number of rest periods for one third of the day.  AR 87.  The VE testified that the individual could not perform any work.  *Id.*  Plaintiff's attorney then asked the VE to consider an individual of the same age, education, and work experience as Plaintiff, restricted to light work, able ability to sit/stand 6 hours of an 8-hour day, able to lift 10 pounds frequently, able to lift 20 pounds occasionally, able to reach overhead occasionally, and restricted to routine and/or repetitive tasks.  AR 87-88.  Plaintiff's attorney asked whether there would be transferability of skills for such an individual from Plaintiff's previous work to other light work.  AR 88.  The VE provided no response on record and the ALJ stated that he would make a finding of no transferability of skills given Plaintiff's advanced age.  *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 12-34.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 7, 2018, the alleged onset date.  AR 17.  The ALJ identified the following severe impairments: bipolar disorder

1   with anxiety, depression and posttraumatic stress disorder (PTSD).  AR 18.  The ALJ determined that

2   Plaintiff did not have an impairment or combination of impairments that met or medically equaled any

3   of the listed impairments.  AR 19-29.  Based on a review of the entire record, the ALJ found that

4   Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all

5   exertional levels with the following nonexertional limitations: she can understand, remember and carry

6   out simple, routine and repetitive tasks using judgment, is limited to simple work-related decisions,

7   and can occasionally interact with the public and coworkers.  AR 20.  With this RFC, and considering

8   Plaintiff's age, education, and work experience, the ALJ found that Plaintiff could perform work in the

9   national economy, such as hand packager, store laborer, or small parts assembler.  AR 29-30.  The

10  ALJ therefore concluded that Plaintiff had not been under a disability from the alleged onset date of

11  November 7, 2018.  AR 30.

12                                        **SCOPE OF REVIEW**

13          Congress has provided a limited scope of judicial review of the Commissioner's decision to

14  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

15  Court must determine whether the decision of the Commissioner is supported by substantial evidence.

16  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

17  402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

18  1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

19  adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be

20  considered, weighing both the evidence that supports and the evidence that detracts from the

21  Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

22  evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

23  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

24  determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

25  and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

26  *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

27          ///

28          ///

                                                    8

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred at Step Two of the sequential evaluation by concluding that certain of Plaintiff's impairments were non-severe impairments and not taking them into account in the sequential evaluation.  (Doc. 10 at 12-15.)  Plaintiff also contends that the ALJ erred by not properly evaluating the opinions of Dr. Charles Edwards, primary care provider Dr. Robert Reina, mental health therapist Donna Villanueva, LMFT, and mental health therapist Janet Black, LCSW. (Doc. 10 at 15-21.)  Plaintiff further contends that the ALJ improperly discredited Plaintiff's subjective complaints and symptom testimony.  (Doc. 10 at 21-26.)  Finally, Plaintiff contends that the ALJ's decision failed to account for Plaintiff's age category in examining the Medical-Vocational Guidelines.  (Doc. 10 at 26.)

### A.  Step Two Impairments

Plaintiff argues that the ALJ erroneously concluded that her physical impairments were non-severe at step two of the sequential evaluation.  (Doc. 10 at 12-15.)  Specifically, Plaintiff contends that the ALJ dismissed Plaintiff's shoulder, neck, back, and ankle pain as non-severe and having only a minimal effect on her ability to perform basic work activities.  (*Id.* at 12.)

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

At step two of the five-step sequential evaluation, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment, or combination of impairments, can be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

In addressing the impairments beyond bipolar disorder with anxiety, depression, and PTSD, the ALJ noted that:

> The undersigned finds that those impairments that are not specifically mentioned reveal only a slight abnormality having such minimal effect on the claimant that it would not be expected to interfere with her ability to perform basic work activities, and, therefore, are nonsevere. For instance, the record shows a diagnosis for multiple strains of the shoulder, neck, back and ankle (Exhibit 6F at 5). The record shows limited treatment for these impairments. In the complete absence of any subsequent medical records showing complaints of or treatment for related symptoms, it is reasonable to conclude that these impairments have not resulted in any limitations on the claimant's ability to do basic work activities and are nonsevere impairments.

AR 18.

1    Substantial evidence supports an ALJ's finding that an impairment is not severe when medical

2    records show that the claimant's impairment has been controlled by treatment.  See *Huff v. Astrue*, 275

3    F. App'x 713, 717 (9th Cir. 2008) (finding ALJ did not err in finding claimant's depression to be non-

4    severe because the ALJ reasonably relied on physician's finding that claimant's depression had

5    improved with treatment); *Kenneth K. v. Berryhill*, 2018 WL 6991256, at *4 (D. Or. Dec. 19, 2018)

6    (finding ALJ's determination that claimant's diabetes was not a severe impairment was supported by

7    substantial evidence because medical records showed her diabetes was "controlled"), report and

8    recommendation adopted by, 2019 WL 165700 (D. Or. Jan. 10, 2019).

9    The ALJ here pointed to evidence in the record showing normal examination findings and

10   minimal treatment associated with Plaintiff's musculoskeletal findings.  AR 18, 442-443 (normal

11   musculoskeletal findings, "Visual overview of all four extremities is normal" despite listed back pain

12   and joint pain), 514-515 (normal findings in physical exam despite listed back pain and muscle

13   weakness), 1318-1319 (normal findings in physical exam despite listed back pain, joint pain, and joint

14   swelling), 1435 (chart update with medication prescriptions).

15   In addition, the ALJ discounted the opinion of physical consultative examiner Dr. Satish

16   Sharma which supported Plaintiff's assertion of physical impairments beyond bipolar disorder with

17   anxiety, depression, and PTSD.  AR 18, 855-860.  In an internal medicine evaluation summary report

18   dated October 13, 2020, Dr. Sharma opined that Plaintiff could perform light work and was limited to

19   occasional bending, stooping, and reaching overhead above the shoulder with the left arm.  AR 860.

20   The ALJ pointed to the inconsistencies within Dr. Sharma's opinion, noting that the limitations Dr.

21   Sharma suggested were not supported by his relatively normal findings, which included no muscle

22   spasms in neck or back, straight leg raising test negative, motor strength muscle power "5/5 in both

23   upper and lower extremities," pain on forward flexion in neck and back, and tenderness to palpation in

24   regions of the left shoulder, neck, and back.  AR 18, 858-860.

25   This evidence of comparatively normal findings with minimal treatment constitutes substantial

26   evidence to support the ALJ's finding that Plaintiff's shoulder, neck, back, and ankle pain were non-

27   severe.  The ALJ thus did not commit error by finding Plaintiff's shoulder, neck, back, and ankle pain

28   to be non-severe impairments at Step Two.

**B.  Medical Opinion Evidence**

Plaintiff contends that the ALJ erred by improperly discounting the opinions of Dr. Charles Edwards and Janet Black, LCSW, Dr. Robert Reina, and mental health therapist Donna Villanueva, LMFT.  (Doc. 10 at 16.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. § 404.1520c.   Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5).   Supportability and consistency are the most important factors.   20 C.F.R. § 404.1520c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  These standards of articulation no longer apply in light of the new regulations, and the ALJ was not required to provide "specific and legitimate reasons" to discount the medical opinions.  *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant").  However, the Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Id.*  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and

1   'explain how [it] considered the supportability and consistency factors' in reaching these findings."

2   *Id.* (internal citations omitted); *see* 20 C.F.R. § 404.1520c(c).  In this context,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence. Id. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim. Id. § 404.1520c(c)(2).

*Id*. at 791-92.

> 1.   Opinion of Dr. Charles Edwards and Janet Black, LCSW

On June 22, 2020, Charles L. Edwards, M.D., and Janet Black, LCSW, filled out a Mental Impairment Questionnaire.  AR 494-499.  On the form, Dr. Edwards noted that he began treating Plaintiff on January 21, 2019 while Ms. Black began treating Plaintiff on November 8, 2018.  AR 494. They treated Plaintiff initially on a bi-weekly basis from November 2018 to January 2019, then on a weekly basis, and finally saw Plaintiff bimonthly as of June 2020.  *Id.*  Dr. Edwards and Ms. Black noted the DSM-5 Evaluation and Diagnoses as "PTSD – Chronic + Acute" and "Bi-polar II – most recent episode – Depression."  *Id*.  Dr. Edwards and Ms. Black indicated that Plaintiff was between "unable to meet competitive standards" and "no useful ability to function" in terms of her ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress.  AR 496.  They further indicated that Plaintiff had "marked" difficulties understanding, remembering, or applying information, "marked" difficulties interacting with others, "marked" difficulties in ability to concentrate, persist, or maintain pace, and "marked" difficulties adapting or managing oneself.  AR 497-498.  They finally indicated that Plaintiff's impairments or treatment would cause her to be absent from work or be unable to complete a work day more than four days per month.  AR 498.

In evaluating Dr. Edwards and Ms. Black's opinion, the ALJ summarized their findings and reasoned as follows:

> The undersigned is not persuaded by the opinions of Dr. Edwards and Ms. Black. There is minimal narrative support for the opinions within the submitted documents, and the initial opinion was based upon a limited treatment period of the claimant, from June 2018 through January 2019

13

(Exhibit 4F). In addition, opinions as to the claimant's extreme mental functional limitations are not supported by Dr. Edward's treatment notes, which show no significant changes, euthymic mood, upbeat presentation, goal directed thought processes and nonpressured speech (Exhibit 5F at 76-77, 89-90, 196-197). Additionally, neither of Ms. Black's opinions are supported by her mostly unremarkable findings, with the exception of labile mood with anxious, agitated and tearful affect, circumstantial speech, episodic tangential reports/responses and episodic mild to moderate dissociative mindsets (Exhibit 5F at 68, 178, 221, 246). Further, their treatment notes did not show that detailed mental functional status examinations were conducted of the claimant, and their opinion is not consistent with that of psychological consultative examiner Dr. Richwerger, who conducted such examination and opined that the claimant was not so limited (Exhibit 3F). Finally, their opinions are also inconsistent with the claimant's reported activities, including attending and/or chairing multiple AA meetings per week, spending time with friends, doing volunteer work, researching and expressing interest in a position as Mental Health Ambassador for Tuolumne County, and creating and selling artwork (Exhibits 5F at 67, 121, 173, 185, 222).

AR 26-27.

The Court finds that the ALJ properly evaluated the June 22, 2020 opinion of Dr. Edwards and Ms. Black under the new regulations.

First, the ALJ found that there was "minimal narrative support" of the opinion, the opinion was not supported by the findings in Dr. Edwards's and Ms. Black's treatment notes, the treatment notes did not show that detailed mental functional status examinations were conducted with Plaintiff, and the initial opinion was based upon a limited treatment period. AR 26. The ALJ's reasoning here invokes the supportability factor. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

In assessing the supportability of Dr. Edwards's and Ms. Black's opinion, the ALJ cited Dr. Edwards's treatment notes as showing a lack of "significant changes, euthymic mood, upbeat presentation, goal directed thought processes and nonpressured speech (Exhibit 5F at 76-77, 89-90, 196-197)." AR 27. A survey of the treatment notes supports this conclusion. In a January 30, 2020 visit report, Dr. Edwards noted that Plaintiff had no significant change and reliable medication

adherence despite reporting exacerbating depressive symptoms and sleeping many hours a day.  AR
575-576.  In a September 30, 2019 visit report, Plaintiff presented with a euthymic mood, had no
significant change in mood, affect, thought process, orientation, behavior, or functioning.  AR 588-
589.  In that visit, Plaintiff was "very upbeat but not hypomanic" and exhibited non-pressured speech
and goal directed thought processes.  *Id.*  In an April 25, 2019 visit report, Plaintiff showed a notable
change in mood and affect, but no significant change in thought process and orientation or behavior
and functioning.  AR 695-696.  The ALJ further cited Ms. Black's treatment notes and "mostly
unremarkable findings, with the exception of labile mood with anxious, agitated and tearful affect,
circumstantial speech, episodic tangential reports/responses and episodic mild to moderate dissociative
mindsets (Exhibit 5F at 68, 178, 221, 246)."  AR 27, 566-67 (June 8, 2020 visit report noting
Plaintiff's anxious mood and affect and that Plaintiff "appears to be anxious, tearful at times; however,
less extremes in [sic] previously.");  677-78 (May 16, 2019 visit report noting Plaintiff's labile mood,
Plaintiff reporting that she "was doing pretty well, the new meds regime is helping," and assessment of
severe major depressive disorder);  720-721 (March 18, 2019 visit report noting Plaintiff's labile mood
and no present psychosis or hopelessness/helplessness, denial of intent or plan to self-injury, Plaintiff
reporting being "physically tired, yet somewhat pleased with self [i.e.] accomplishments and being
able to stay out of bed for the amount of time.");  744-45 (January 21, 2019 visit report noting
Plaintiff's labile mood, Plaintiff "appears to be less anxious, Lucid, and more connected w/emotions,
with the goal of 'letting go of the hurt & go forward.'"  Also notes that Plaintiff feels she is at a "7/10"
in her progress and feels "more empowered, feeling less depressed AND NOT suicidal.").

The ALJ also notes that the opinion itself offered minimal narrative support and did not show
whether detailed mental functional status examinations were conducted with Plaintiff.  AR 27.
Indeed, apart from checking boxes for Plaintiff's symptoms, the main support in the opinion comes
from Dr. Edwards and Ms. Black writing that the clinical findings that demonstrate the severity of
Plaintiff's impairment included "Dissociative process during session, hypervigilance, anxiety,
uncontrollable crying, reports sleeping 12-15 hrs/day, Diff. memory, concentration, processing info."
AR 494.  The ALJ thus properly evaluated the supportability of Dr. Edwards's and Ms. Black's
opinion based upon their treatment notes and the opinion itself.

1    The ALJ further notes that the "initial opinion was based upon a limited treatment period of the

2    claimant, from June 2018 through January 2019 (Exhibit 4F)." AR 27. However, on the form, Dr.

3    Edwards noted that he began treating Plaintiff on January 21, 2019 while Ms. Black began treating

4    Plaintiff on November 8, 2018 and treated Plaintiff on a bimonthly or weekly basis. AR 494. As

5    discussed above and cited by the ALJ, their treatment notes primarily include reports from after

6    January 2019. AR 566-67, 575-76, 588-89, 695-96, 677-78, 720-721, 744-45. Accordingly, it appears

7    that the ALJ erred in stating the treatment period lasted from June 2018 through January 2019.

8    Nevertheless, the Ninth Circuit has found the harmless error standard applies in instances of ALJ's

9    discounting of physician opinions. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (holding

10   that the "harmless error analysis applies ... to assess the impact of the ALJ's failure to even mention [a

11   treating physician] or [his] notes, let alone its failure to give specific and legitimate reasons that are

12   supported by substantial evidence for rejecting a treating source's medical opinion"); *Hernandez v.*

13   *Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (holding that the ALJ committed harmless error in

14   misidentifying physician's notes); *Roy v. Colvin*, 656 F. App'x 816, 818–19 (9th Cir. 2016) (holding

15   the ALJ committed harmless error where she did not consider a reviewing physician's opinion because

16   she believed the physician was "referring to 'another individual of the same name.'") The Ninth

17   Circuit has also "affirmed under the rubric of harmless error where the mistake was nonprejudicial to

18   the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r*, 454 F.3d

19   1050, 1055 (9th Cir. 2006). Even if the ALJ erred in his belief that the treatment was limited to a

20   seven-month period from June 2018 through January 2019, the ALJ still appears to have assessed the

21   treatment period through the June 2020 opinion. AR 26-27. Additionally, the ALJ did not solely

22   discredit Dr. Edwards and Ms. Black's opinion based upon his belief that there was an abbreviated

23   treatment period. Instead, the ALJ examined multiple items affecting the supportability and

24   consistency of the opinion. *Id.* Accordingly, the ALJ's error in assuming that "initial opinion was

25   based upon a limited treatment period of the claimant, from June 2018 through January 2019" is

26   harmless and does not necessitate remand.

27   Second, the ALJ found that Dr. Edwards's and Ms. Black's opinion was "not consistent with

28   that of psychological consultative examiner Dr. Richwerger, who conducted [a detailed mental

16

functional status] examination and opined that the claimant was not so limited (Exhibit 3F)."  AR 27.  This reasoning invokes the consistency factor.  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c.  The opinion from Dr. Richwerger included relatively normal findings regarding the client's mannerisms, orientation and intellect, speech, thought processes, understanding of instructions, affect and emotional expression, memory and concentration.  AR 489-90.  Dr. Richwerger also conducted a mental status examination and his opinion included normal results of tests involving abstractions and similarities, judgment, calculations, fund of knowledge, and proverbs.  AR 490.  In his functional assessment, Dr. Richwerger found that Plaintiff had no impairment in her ability to: perform detailed and complex tasks, perform simple and repetitive tasks, perform work activities without special supervision, and understand and accept instructions from supervisors.  AR 492.  Dr. Richwerger further found that Plaintiff had only mild impairment in her ability to interact with coworkers and the public and maintain regular attendance in the workplace.  AR 491.  Given the inconsistency between Dr. Edwards and Ms. Black's opinion and Dr. Richwerger's relatively normal findings, the ALJ properly evaluated their opinion under the consistency factor.

The ALJ further noted that that Dr. Edwards's and Ms. Black's opinion was also inconsistent with Plaintiff's reported activities.  AR 27.  ALJs may consider a claimant's reported activities in evaluating the persuasiveness of medical opinions.  *Mitchell v. Kijakazi*, No. 21-35647, 2022 WL 17547806, at *1 (9th Cir. Dec. 9, 2022) (finding that substantial evidence supported the ALJ's decisions where the ALJ evaluated medical opinions' "consistency and supportability against other evidence in the record, including… [a plaintiff's] contrasting reported activities"); *Leonard v. Comm'r of Soc. Sec.*, No. 1:21-cv-00627-EPG, 2022 WL 4123990, at *4 (E.D. Cal. Sept. 9, 2022) ("when considered in conjunction with the rest of the ALJ's reasoning, the ALJ's reliance on Plaintiff's daily activities—caring for her cat, preparing simple meals, cleaning, and sometimes administering her father's insulin, etc.—is a reasonable basis to discount the severe limitations assessed [in a medical opinion]").  Here, the ALJ noted that the reported activities include "attending and/or chairing multiple

17

AA meetings per week, spending time with friends, doing volunteer work, researching and expressing interest in a position as Mental Health Ambassador for Tuolumne County, and creating and selling artwork (Exhibits 5F at 67, 121, 173, 185, 222)."  AR 27, 566 (Plaintiff said she "really appreciates and enjoys her roommate who works for the Tuolumne County behavioral health Department" and has "really good talks" with her roommate); 620 (Plaintiff stated that she "really wants to be" a Mental Health Ambassador for Tuolumne County and is "willing [to] investigate more and will follow protocol to obtain the job"); 672 (Plaintiff continued to go AA meetings during the week); 684 (Plaintiff "is hiking at least once a week with friends, has attended 2 potluck functions, all within the last week."); 721 (Plaintiff was physically tired but was pleased with "being able to stay out of bed for the amount of time," met with her best friend, agreed to continue meeting her best friend on a weekly basis, and volunteered at a play where she "[r]eally enjoyed interacting with the community"). Accordingly, the ALJ appropriately evaluated the persuasiveness of Dr. Edwards's and Ms. Black's opinion with evidence from other medical sources and nonmedical sources.

Plaintiff argues that the ALJ improperly "cherry picked" from medical evidence to discredit the opinion of Dr. Edwards and Ms. Black.  (Doc. 10 at 17.)  The Ninth Circuit has noted that it is "improper for the ALJ to discount [a claimant's] testimony by 'cherry pick[ing]' the absence of certain symptoms from the report." *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017).  The Ninth Circuit further cautioned that, "[w]hile ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014).  However, the ALJ here appears to have examined and cited the relevant treatment notes and record in evaluating Dr. Edwards's and Ms. Black's opinion rather than choosing unrepresentative data points.  AR 27, 566-67, 575-76, 588-89, 677-78, 695-96, 720-721, 744-45.  Accordingly, the ALJ properly evaluated the persuasiveness of Dr. Edwards and Ms. Black's opinion.

Plaintiff further contends that the ALJ erred by failing to consider the 20 C.F.R. § 404.1520c(c)(1)-(5) factors of (1) Supportability; (2) Consistency; (3) Relationship with the claimant; (4) Specialization; and (5) Other factors including "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." (Doc. 10 at 20.) The statute notes that the ALJs "may, but are not required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [they] articulate how [they] consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2). A discussion of the Relationship, Specialization, and "Other" factors may be appropriate when 'two or more medical opinions ... about the same issue are ... equally well-supported ... and consistent with the record ... but are not exactly the same.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)(3)).

Here, the opinions were not equally well-supported, and the ALJ was not required to address the Relationship, Specialization, and "Other" factors. Nevertheless, the ALJ appears to have discussed the factors relevant to the case. As discussed above, the ALJ invoked the "most important" Supportability and Consistency factors in his analysis. AR 26-27. In addition, the ALJ reviewed and discussed Dr. Edwards's and Ms. Black's relationship with the Plaintiff in his discussion of the treatment period and his review of their treatment notes. AR 26-27 (reviewing Dr. Edwards's and Ms. Black's treatment notes and findings). As to the Specialization factor, the ALJ notes Dr. Edwards's M.D. Credentials and Ms. Black's LCSW credentials. AR 26. In her motion, Plaintiff notes that Plaintiff's "doctors and therapists have extensive psychiatric experience," but does not provide further detail regarding experience or specialization. (Doc. 10 at 21.) As to the "Other" factors, there is no indication in the record that Dr. Edwards or Ms. Black were familiar with the other evidence in the claim or had an understanding of Social Security policies and evidentiary requirements. The ALJ therefore properly considered the 20 C.F.R. § 404.1520c(c) factors in his discounting of Dr. Edwards and Ms. Black's opinion.

2. Opinion of Janet Black, LCSW

On November 1, 2022, Ms. Black, LCSW, filled out another Mental Impairment Questionnaire. AR 1462-1466. Ms. Black noted that she began treating Plaintiff on November 18, 2018 and had seen Plaintiff weekly, though Plaintiff worked with a "different clinical for one year." AR 1462. On the form, Ms. Black indicated that Plaintiff had no useful ability to function in remembering work-like procedures and maintaining attention for two-hour segments. AR 1464. Ms.

Black further indicated that Plaintiff was either unable to meet competitive standards or had no useful ability to function in completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in a routine work setting, dealing with normal work stress, understanding and remembering detailed instructions, carrying out detailed instructions, traveling in unfamiliar places, and using public transportation. AR 1464-1465. Ms. Black also indicated that Plaintiff was unable to meet competitive standards in understanding and remembering very short and simple instructions, accepting instructions, and responding appropriately to criticism from supervisors. AR 1464. Ms. Black indicated that Plaintiff's impairments or treatment would cause her to be absent from work or be unable to complete a workday more than four days per month. AR 1466.

In evaluating Ms. Black's opinion along with her earlier opinion with Dr. Edward, the ALJ reasoned as follows:

> The undersigned is not persuaded by the opinions of Dr. Edwards and Ms. Black. There is minimal narrative support for the opinions within the submitted documents, and the initial opinion was based upon a limited treatment period of the claimant, from June 2018 through January 2019 (Exhibit 4F). In addition, opinions as to the claimant's extreme mental functional limitations are not supported by Dr. Edward's treatment notes, which show no significant changes, euthymic mood, upbeat presentation, goal directed thought processes and nonpressured speech (Exhibit 5F at 76-77, 89-90, 196-197). Additionally, neither of Ms. Black's opinions are supported by her mostly unremarkable findings, with the exception of labile mood with anxious, agitated and tearful affect, circumstantial speech, episodic tangential reports/responses and episodic mild to moderate dissociative mindsets (Exhibit 5F at 68, 178, 221, 246). Further, their treatment notes did not show that detailed mental functional status examinations were conducted of the claimant, and their opinion is not consistent with that of psychological consultative examiner Dr. Richwerger, who conducted such examination and opined that the claimant was not so limited (Exhibit 3F). Finally, their opinions are also inconsistent with the claimant's reported activities, including attending and/or chairing multiple AA meetings per week, spending time with friends, doing volunteer work, researching and expressing interest in a position as Mental Health Ambassador for Tuolumne County, and creating and selling artwork (Exhibits 5F at 67, 121, 173, 185, 222). Finally, Ms. Black's latter opinion is supported by no contemporaneous

treatment notes, as the record shows no treatment of the claimant by Ms.
Black after June 2020 (Exhibit 5F at 57).

AR 26-27.

First, the ALJ found that there was "minimal narrative support" of the opinion, the opinion was not supported by the findings in Ms. Black's treatment notes, the treatment notes did not show that detailed mental functional status examinations were conducted with Plaintiff, and the initial opinion was based upon a limited treatment period.  AR 26.  This reasoning invokes the supportability factor, which means "the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'"  *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)).

In assessing Ms. Black's opinion, the ALJ cites Ms. Black's treatment notes and "mostly unremarkable findings, with the exception of labile mood with anxious, agitated and tearful affect, circumstantial speech, episodic tangential reports/responses and episodic mild to moderate dissociative mindsets (Exhibit 5F at 68, 178, 221, 246)."  AR 27, 566-67 (June 8, 2020 visit report noting Plaintiff's anxious mood and affect and that Plaintiff "appears to be anxious, tearful at times; however, less extremes in [sic] previously."); 677-678 (May 16, 2019 visit report noting Plaintiff's labile mood, Plaintiff reporting that she "was doing pretty well, the new meds regime is helping," and assessment of severe major depressive disorder); 720-721 (March 18, 2019 visit report noting Plaintiff's labile mood and no present psychosis or hopelessness/helplessness, denial of intent or plan to self-injury, Plaintiff reporting being "physically tired, yet somewhat pleased with self [i.e.] accomplishments and being able to stay out of bed for the amount of time."); 744-45 (January 21, 2019 visit report noting Plaintiff's labile mood, Plaintiff "appears to be less anxious, Lucid, and more connected w/emotions, with the goal of 'letting go of the hurt & go forward.'"  Also notes that Plaintiff feels she is at a "7/10" in her progress and feels "more empowered, feeling less depressed AND NOT suicidal.").  The ALJ therefore evaluated the supportability of Ms. Black's opinion.

The ALJ also incorrectly states that Ms. Black's November 1, 2022, opinion is not supported by contemporaneous treatment notes, "as the record shows no treatment of the claimant by Ms. Black after June 2020 (Exhibit 5F at 57)".  AR 27.  However, the record provides multiple case consultation

reports from visits Plaintiff had with Ms. Black in September and October 2021.  AR 1456-1458 (October 19, 2021 report noting euthymic mood and anxious affect); 1453-1455 (October 12, 2021 report noting euthymic mood and congruent affect); 1450-1452 (September 23, 2021 report noting Plaintiff's symptoms of depression have improved but that Plaintiff feels constantly tired); 1447-1449 (September 20, 2021 report noting Plaintiff's dysphoric mood with anxious affect, and that Plaintiff "appears to be mildly dissociative at the end of session" but "denies any thoughts/intent, or plans of suicide or harming others" and "reports that current medicine regime appears to be helping.").  It therefore appears that the ALJ erred in his assumption that the record showed no treatment of the claimant by Ms. Black after June 2020.  Nevertheless, the Ninth Circuit has found the harmless error standard applies in instances of ALJ's discounting of physician opinions.  *See Marsh*, 792 F.3d at 1172; *Hernandez,* 707 F. App'x at 458; *Roy*, 656 F. App'x at 818–19.  The Ninth Circuit has also "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."  *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Even if the ALJ erred in his belief that there were no treatment notes from Ms. Black after 2020, the findings in her treatment notes were substantially similar to her earlier findings.  AR 566-567, 677-678, 720-721, 744-745, 1456-1458, 1453-1455, 1450-1452, 1447-1449.  In addition, the ALJ did not solely discredit Ms. Black's November 1, 2022 opinion based upon the lack of later treatment notes.  AR 27.  The ALJ instead evaluated Ms. Black's opinion based upon its supportability and consistency.  Accordingly, the ALJ's error in assuming that "the record shows no treatment of the claimant by Ms. Black after June 2020" is harmless and does not necessitate remand.

Second, the ALJ found that Ms. Black's opinion was "not consistent with that of psychological consultative examiner Dr. Richwerger, who conducted [a detailed mental functional status] examination and opined that the claimant was not so limited (Exhibit 3F)."  AR 27.  The ALJ also noted that Ms. Black's opinion was also inconsistent with Plaintiff's reported activities.  *Id.*  This reasoning invokes the consistency factor, which "means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'"  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).  As discussed above, Dr. Richwerger conducted a mental status examination and his opinion included relatively normal findings and results

with a functional assessment that Plaintiff had only mild impairment in her ability to interact with coworkers and the public and maintain regular attendance in the workplace and no impairment in her ability to perform detailed and complex tasks, perform simple and repetitive tasks, perform work activities without special supervision, understand and accept instructions from supervisors.  AR 489-92.  Given the inconsistency between Ms. Black's opinion and Dr. Richwerger's relatively normal findings, it appears that the ALJ appropriately evaluated the consistency of Ms. Black's opinion with evidence from other medical sources and nonmedical sources.

The ALJ further noted that that Ms. Black's opinion was also inconsistent with Plaintiff's reported activities.  AR 27.  ALJs may consider a claimant's reported activities in evaluating the persuasiveness of medical opinions.  *Mitchell*, 2022 WL 17547806, at *1; *Leonard*, 2022 WL 4123990, at *4.  The ALJ noted that Plaintiff's reported activities include "attending and/or chairing multiple AA meetings per week, spending time with friends, doing volunteer work, researching and expressing interest in a position as Mental Health Ambassador for Tuolumne County, and creating and selling artwork (Exhibits 5F at 67, 121, 173, 185, 222)."  AR 27, 566 (Plaintiff said she "really appreciates and enjoys her roommate who works for the Tuolumne County behavioral health Department" and has "really good talks" with her roommate); 620 (Plaintiff stated that she "really wants to be" a Mental Health Ambassador for Tuolumne County and is "willing [to] investigate more and will follow protocol to obtain the job"); 672 (Plaintiff continued to go AA meetings during the week); 684 (Plaintiff "is hiking at least once a week with friends, has attended 2 potluck functions, all within the last week."); 721 (Plaintiff was physically tired but pleased with "being able to stay out of bed for the amount of time," met with her best friend, agreed to continue meeting with her friend on a weekly basis, and volunteered at a play where she "[r]eally enjoyed interacting with the community").  Accordingly, the ALJ properly evaluated the persuasiveness of Ms. Black's opinion through examining Plaintiff's reported activities.

As discussed above, Plaintiff argues that the ALJ improperly "cherry picked" from medical evidence to discredit the opinion of Ms. Black.  (Doc. 10 at 17.); *see Diedrich*, 874 F.3d at 642; *Garrison*, 759 F.3d at 1018.  However, the ALJ here appears to have examined and cited the relevant treatment notes and record preceding Dr. Edward's and Ms. Black's opinion rather than choosing

1   unrepresentative data points.  AR 27, 566-67, 575-76, 588-89, 677-78, 695-96, 720-721, 744-45.

2   Accordingly, the ALJ properly evaluated the persuasiveness of Dr. Edwards and Ms. Black's opinion.

3            Plaintiff further contends that the ALJ erred in evaluating Ms. Black's opinion by failing to

4   consider the 20 C.F.R. § 404.1520c(c) factors, which include (1) Supportability; (2) Consistency; (3)

5   Relationship with the claimant; (4) Specialization; and (5) Other factors including "evidence showing

6   a medical source has familiarity with the other evidence in the claim or an understanding of our

7   disability program's policies and evidentiary requirements."  (Doc. 10 at 20.)  ALJs "may, but are not

8   required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) of this

9   section, as appropriate, when [they] articulate how [they] consider medical opinions and prior

10   administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(2).  A discussion of

11   the Relationship, Specialization, and "Other" factors may be appropriate when 'two or more medical

12   opinions ... about the same issue are ... equally well-supported ... and consistent with the record ... but

13   are not exactly the same.'"  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)(3)).

14            Here, the opinions were not equally well-supported, and the ALJ was not required to address

15   the Relationship, Specialization, and Other factors.  Nevertheless, the ALJ appears to have discussed

16   the factors relevant to the case.  As discussed above, the ALJ invoked the "most important"

17   Supportability and Consistency factors in his analysis.  AR 26-27.  In addition, the ALJ appears to

18   have reviewed and discussed Ms. Black's relationship with the Plaintiff in his discussion of the

19   treatment period and his review of their treatment notes.  *Id.*  (reviewing Ms. Black's treatment notes

20   and findings).  As to the Specialization factor, the ALJ notes Ms. Black's LCSW credentials.  AR 26.

21   In her motion, Plaintiff notes that Plaintiff's "therapists have extensive psychiatric experience," but

22   does not provide further detail regarding experience or specialization.  (Doc. 10 at 21.)  As to the

23   "Other" factors, there is no indication in the record that Ms. Black was familiar with the other

24   evidence in the claim or had an understanding of Social Security policies and evidentiary

25   requirements.  The ALJ therefore properly considered the 20 C.F.R. § 404.1520c(c) factors in his

26   discounting of Ms. Black's opinion.

27            ///

28            ///

24

3.   Opinion of Dr. Robert Reina, M.D.

On March 10, 2021, Robert Reina, M.D., filled out a Physical Residual Functional Capacity Questionnaire.  AR 948-949.  On the form, Dr. Reina noted that he began treating Plaintiff on January 20, 2014, and had saw Plaintiff every three months.  AR 948.  He listed his diagnoses as "PTSD (chronic and acute), Bipolar II disorder" and the prognosis as "Poor prognosis as she has been struggling with diagnosis since 2014 with poor results."  *Id*.  Dr. Reina indicated that Plaintiff could sit for at least 6 hours in a day, Plaintiff could stand or walk for about four hours in a day, and Plaintiff required three-minute periods of walking around every 90 minutes during an eight-hour working day. *Id*.  Dr. Reina further indicated that Plaintiff would not need to take unscheduled breaks during an eight-hour working day, did not need to have her legs be elevated.  AR 949.  Dr. Reina marked that in a competitive work situation, Plaintiff could never lift fifty pounds, could occasionally lift twenty pounds, and could frequently lift ten pounds or less.  *Id*.  Dr. Reina further noted that Plaintiff's impairments were likely to produce "good days" and "bad days" and that on average, he estimated Plaintiff to be absent for more than four days per month.  *Id*.

In evaluating Dr. Reina's opinion, the ALJ summarized his findings and reasoned as follows:

> In a form dated March 10, 2021, Robert Reina, M.D., opined that because of PTSD and bipolar II disorder, the claimant could, in part, stand/walk for about four hours, sit for at least six hours, occasionally lift twenty pounds, frequently lift ten pounds, and would miss more than four days of work per month (Exhibit 9F). The undersigned is not persuaded by the opinion of Dr. Reina. His opinion of the claimant's physical functional limitations is internally unsupported by his diagnoses of chronic and acute PTSD and bipolar II disorder (Exhibit 9F at 1). What is more, his opinion of these limitations is not supported by his mostly normal physical exam findings (Exhibit 2F at 12-13, 16, 21, 45-46). Finally, his opinion is not consistent with other unremarkable physical exam findings of record (5F at 16; 11F at 11; 12F at 61).

AR 19.

The Court finds that the ALJ properly evaluated the opinion of Dr. Reina under the new regulations.  First, the ALJ found that Dr. Reina's opinion was "unsupported by his diagnoses of chronic and acute PTSD and bipolar II disorder" and Dr. Reina's opinion of Plaintiff's limitations were "not supported by his mostly normal physical exam findings."  AR 19.  This reasoning invokes

the supportability factor, which means "the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)).

The ALJ's note that Dr. Reina's opinion was "unsupported by his diagnoses of chronic and acute PTSD and bipolar II disorder" appears to consider that Dr. Reina did not provide further explanation or connection between the diagnoses and the limited functionality he suggests. Furthermore, the ALJ cites Dr. Reina's treatment notes, which reveal normal findings as to orientation, affect, and mood as well as a mix of positive and negative findings for depression and anxiety and related symptoms. *See* AR 19, 420-423 (September 11, 2019 office visit report noting "symptoms are reported as being severe" and "Leading diagnosis is bipolar" though Plaintiff is "Doing well with Lamictal/Effexor," "states 'this is the best she has felt in a long time'" and "Denies any severe depression."); 424-427 (June 27, 2014 office visit report noting "symptoms are chronic and are uncontrolled, patient was severe anxiety disorder with panic attacks... Her medications are being adjusted. Still with severe anxiety disorder and panic attacks. On temp her disability due to her inability to manage her work at this time."); 428-431 (April 18, 2019 office visit report noting "patient presents with anxious/fearful thoughts, compulsive thoughts, depressed mood, difficulty concentrating, difficulty falling asleep, diminished interest or pleasure, excessive worry, fatigue, racing thoughts and restlessness but denies feelings of invulnerability, loss of appetite, paranoia or thoughts of death or suicide... Interventions the patient has tried have not provided any relief" but psychiatric findings are "Normal... Oriented to time, place, person & situation. No agitation. Appropriate mood and affect. Sufficient fund of knowledge. Sufficient language... Not forgetful... No increased activity. No memory loss. Normal insight. Normal judgment. No suicidal ideation."); 432-435 (March 14, 2019 office visit noting "symptoms are reported as being incapacitating" and "occur constantly," though "Normal" psychiatric findings with appropriate orientation, mood, and affect.); 436-439 (February 27, 2019 office visit report noting depression "symptoms are uncontrolled. There is worsening of previously reported symptoms. The patient reports functioning as very difficult." Positive psychiatric findings for anxiety, compulsive thoughts or behaviors, excessive worry, feeling down, depressed, or hopeless, Little interest or pleasure in doing things, racing thoughts. Negative

26

psychiatric findings for decreased sleep, invulnerability, and suicidal ideation. Normal psychiatric findings as to orientation, mood, and affect.); 440-444 (February 12, 2019 office visit report noting positive psychiatric findings for depression, feeling down, depressed, or hopeless, little interest or pleasure in doing things.  Negative psychiatric findings for anxiety, insomnia, and suicidal ideation. Normal psychiatric findings as to orientation, mood, and affect.); 445-448  (November 21, 2018 office visit report noting normal findings as to orientation, mood, and affect; positive findings for difficulty concentrating, feeling down, depressed or hopeless; and negative findings for anxiety, depression, and suicidal ideation); 449-452 (November 8, 2018 office visit report noting positive findings for anxiety, compulsive thoughts, feeling down, suicidal ideation; negative findings for difficulty concentrating, hallucinations, paranoia, and racing thoughts; normal findings as to orientation, mood, and affect); 453-456 (October 10, 2017 office visit report noting negative findings as to feeling down, depressed or hopeless and little interest or pleasure in doing things; normal findings as to orientation, mood, and affect).  While there are positive findings related to depression and anxiety, the ALJ holistically examined Dr. Reina's treatment notes to address the supportability of his opinion.

Second, the ALJ found that Dr. Reina's opinion was "not consistent with other unremarkable physical exam findings of record (5F at 16; 11F at 11; 12F at 61)."  AR 19.  This reasoning invokes the consistency factor, which "means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'"  *Woods*, 34 F.4th at 792. The ALJ cited findings and charts in the record that reveal relatively normal findings.  AR 515 (normal eyes, ears, nasopharynx, respiratory, cardiovascular, abdomen, extremity, neurological, and psychiatric findings); 1319 (normal constitutional, eyes, ears, nose/mouth/throat, neck exam, respiratory, cardiovascular, abdomen, extremity, neurological, psychiatric findings); 1435-1437 (noting medication chart update).  Given the inconsistency between Dr. Reina's opinion and his relatively unremarkable findings and other findings in the record, the ALJ properly evaluated his opinion under the consistency factor analysis.

Plaintiff argues that the ALJ improperly "cherry picked" from medical evidence to discount Dr. Reina's opinion.  (Doc. 10 at 17.); *see Diedrich*, 874 F.3d at 642; *Garrison*, 759 F.3d at 1018. However, the ALJ here appears to have examined and cited the relevant treatment notes and record

preceding Dr. Reina's opinion rather than choosing unrepresentative data points.  AR 19, 420-423; 424-427; 428-431; 432-435, 436-439, 440-444, 445-448, 449-452, 453-456.  Accordingly, the ALJ properly evaluated the persuasiveness of Dr. Reina's opinion.

Plaintiff further contends that the ALJ erred in evaluating Dr. Reina's opinion by failing to consider the 20 C.F.R. § 404.1520c(c) factors of (1) Supportability; (2) Consistency; (3) Relationship with the claimant; (4) Specialization; and (5) Other factors including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  (Doc. 10 at 20.)  ALJs "may, but are not required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [they] articulate how [they] consider medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(2).  A discussion of the Relationship, Specialization, and "Other" factors may be appropriate when 'two or more medical opinions ... about the same issue are ... equally well-supported ... and consistent with the record ... but are not exactly the same.'"  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)(3)).

Here, the opinions were not equally well-supported, and the ALJ was not required to address the Relationship, Specialization, and "Other" factors.  Nevertheless, the ALJ discussed the factors relevant to the case.  As discussed above, the ALJ invoked the "most important" Supportability and Consistency factors in his analysis.  AR 19.  Additionally, as to the specializations factor, the ALJ noted Dr. Reina's M.D. credentials in assessing his opinion.  AR 19.  In her motion, Plaintiff notes that "[t]hese doctors and therapists have extensive psychiatric experience," but does not provide further detail regarding Dr. Reina's experience or specialization.  (Doc. 10 at 21.)  As to the "Other" factors, there is no indication in the record that Dr. Reina was familiar with the other evidence in the claim or had an understanding of Social Security policies and evidentiary requirements.  The ALJ therefore properly considered the 20 C.F.R. § 404.1520c(c) factors in his discounting of Dr. Reina's opinion.

4.  Opinion of Donna Villanueva, LMFT

On February 18, 2021, Donna Villanueva, LMFT, filled out a Mental Impairment Questionnaire.  AR 943-47.  In the questionnaire, Ms. Villanueva noted that she began treating Plaintiff on August 3, 2020, for Post-Traumatic Stress Disorder and Major Depressive Disorder with

weekly contact.  AR 943.  Ms. Villanueva noted that the present treatment was weekly psychotherapy and Effexor and Abilify prescriptions which had no side effects.  *Id.*  Ms. Villanueva wrote that Plaintiff "is significantly impaired in her ability to do work tasks and social functioning due to the symptoms of her PTSD and MDD."  *Id.*  Ms. Villanueva indicated that Plaintiff's symptoms included: anhedonia, significant difficulties learning and using academic skills, thoughts of suicide or death, feelings of guilt or worthlessness, panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences, disturbance of mood and behavior, feelings of inadequacy, involuntary re-experiencing of the traumatic event, difficulty thinking or concentrating, irritability, frequent distractibility, decreased energy, disproportionate fear or anxiety about at least two different situations, easily fatigued, avoidance of external reminders of traumatic event, muscle tension, depressed mood, easy distractibility, preoccupation with perfectionism and orderliness.  AR 944.  Ms. Villanueva indicated that Plaintiff did not have reduced intellectual functioning and that the psychiatric condition did not exacerbate Plaintiff's experience of pain or other physical symptoms.  *Id.*

Ms. Villanueva also indicated that Plaintiff had "no useful ability to function" regarding completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.  AR 945.  Ms. Villanueva further indicated that Plaintiff was "unable to meet competitive standards" in dealing with normal work stress, dealing with stress of semiskilled and skilled work, traveling in unfamiliar places, and using public transportation.  AR 945-946.  She also indicated that Plaintiff had a "marked" functional limitation, with "[d]ifficulties in the ability to concentrate, persist, or maintain pace."  AR 946.  Ms. Villanueva wrote that the "significant symptoms of PTSD make it difficult to do everyday jobs tasks."  AR 947.  She further estimated Plaintiff's impairments or treatment would cause Plaintiff to be absent or unable to complete a work day for more than four days per month.  *Id.*

In evaluating Ms. Villanueva's opinion, the ALJ summarized her findings and reasoned as follows:

> On February 18, 2021, Donna Villanueva, LMFT, opined, in part, that the claimant had no useful abilities to function in a normal workday or

29

workweek or perform at a consistent pace, and she was unable to meet competitive standards with respect to dealing with normal work stress, skilled or semi-skilled work, traveling in unfamiliar places, or using public transportation. She determined that the claimant would miss more than four days of work per month due to her psychiatric impairments (Exhibit 8F). The undersigned is not persuaded by the opinion of Ms. Villanueva. Such opinion is supported by a limited narrative based upon a limited treatment period, as Ms. Villanueva reported that she had just started treating the claimant on August 3, 2020 (Exhibit 8F at 1). In addition, the record contains no mental status findings from Ms. Villanueva, and her opinion is not supported by her recommendation of generally conservative treatment with group therapy and EMDR (Exhibit 7F at 37). Moreover, her opinion of the claimant's extreme mental functional limitations is not consistent with the normal mental status findings of record (Exhibits 1F at 17, 18; 2F at 13, 16, 21, 24; 3F at 5, 6; 5F at 67, 89, 246; 6F at 4; 7F at 32, 33; 12F at 5, 79). Further, Ms. Villanueva's opinion is inconsistent with the claimant's reported activities, including having a supportive roommate and friends and creating and selling artwork (Exhibit 7F at 70, 74, 77, 78). It is further inconsistent with the claimant's ability to participate in developing a plan of care and to decrease her depressive symptoms using skills gained through therapy (Exhibit 7F at 59, 73, 79).

AR 28.

The Court finds that the ALJ properly evaluated the opinion of Ms. Villanueva under the new regulations. First, the ALJ found that the opinion is only "supported by a limited narrative based upon a limited treatment period" and "contains no mental status findings from Ms. Villanueva." AR 28. This reasoning invokes the supportability factor, which means "the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). As noted by the ALJ, Ms. Villanueva's progress notes in the record show client narratives without further mental status examination findings and a limited treatment window from August 28, 2020 to February 5, 2021. AR 897-942. The ALJ thus appropriately examined Ms. Villanueva's treatment notes to address the supportability of her opinion.

Second, the ALJ found that Ms. Villanueva's opinion was "not consistent with the normal mental status findings of record (Exhibits 1F at 17, 18; 2F at 13, 16, 21, 24; 3F at 5, 6; 5F at 67, 89, 246; 6F at 4; 7F at 32, 33; 12F at 5, 79)." This reasoning invokes the consistency factor, which "means the extent to which a medical opinion is 'consistent ... with the evidence from other medical

sources and nonmedical sources in the claim.'"  *Woods*, 34 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).  The ALJ cited treatment notes and visit reports that reveal relatively normal findings.  AR 406-407 (normal neurological and psychiatric mood and affect findings, noting anxiety, depression, and suicide risk); 422 (normal psychiatric exam findings), 425 (normal psychiatric exam findings), 430 (normal psychiatric exam findings), 433 (normal psychiatric exam findings); 489-490 (noting that Plaintiff's "depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications." Normal findings as to orientation, intellect, speech, thought processes, understanding of instructions, memory, concentration, judgment, fund of knowledge, reality contact, and cognitive test results); 566-567 (noting anxious mood and affect and that Plaintiff "appears to be anxious, tearful at times; however, less extremes in [sic] previously."); 588-589 (noting no significant change in mood, affect, thought process, orientation, behavior, or functioning. Plaintiff presenting with a euthymic mood, "very upbeat but not hypomanic," goal directed thought processes, and speech not pressured); 744-745 (noting Plaintiff's labile mood, Plaintiff "appears to be less anxious, Lucid, and more connected w/emotions, with the goal of 'letting go of the hurt & go forward.'"  Also notes that Plaintiff feels she is at a "7/10" in her progress and feels "more empowered, feeling less depressed AND NOT suicidal."); 858-860 (normal neurological evaluation findings, noting chronic fatigue syndrome, referral to specialist for evaluation of anxiety, depression, PTSD, bipolar disorder, and schizoaffective disorder); 892-93 (normal findings for speech, thought, orientation, and attention; findings of "fair," "poor," or "impaired" for ability to concentrate, memory, judgment, and insight); 1379 (noting severe depression and severe bipolar disorder, patient plan includes continuing current medications and following up in three months), 1453 (Plaintiff was "alert and oriented, with mild-moderate dissociative episodes during session; with Euthymic Mood with congruent Affect. She reports in a Linear Thought Process as she shares serious changes within her support circle.").  Given the inconsistency between Ms. Villanueva's opinion and other findings in the record, the ALJ properly evaluated her opinion through a consistency factor analysis.

Plaintiff argues that the ALJ improperly "cherry picked" from medical evidence to discount Ms. Villanueva's opinion.  (Doc. 10 at 17.); *see Diedrich*, 874 F.3d at 642; *Garrison*, 759 F.3d at 1018.  However, the ALJ here appears to have examined and cited the relevant treatment notes and

1   record rather than relying on unrepresentative data points.  AR 406-407, 422, 425, 433, 489-490, 566-

2   67, 588-89, 744-45, 858-860, 892-93, 897-942, 1379, 1453.  Accordingly, the ALJ properly evaluated

3   the persuasiveness of Ms. Villanueva's opinion.

4           Plaintiff further contends that the ALJ erred in evaluating Ms. Villanueva's opinion by failing

5   to consider the 20 C.F.R. § 404.1520c(c) factors of: (1) Supportability; (2) Consistency; (3)

6   Relationship with the claimant; (4) Specialization; and (5) Other factors including "evidence showing

7   a medical source has familiarity with the other evidence in the claim or an understanding of our

8   disability program's policies and evidentiary requirements."  (Doc. 10 at 16.)  ALJs "may, but are not

9   required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) of this

10  section, as appropriate, when [they] articulate how [they] consider medical opinions and prior

11  administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(2).  A discussion of

12  the Relationship, Specialization, and "Other" factors may be appropriate when 'two or more medical

13  opinions ... about the same issue are ... equally well-supported ... and consistent with the record ... but

14  are not exactly the same.'"  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)(3)).

15          Here, the opinions were not equally well-supported, and the ALJ was not required to address

16  the Relationship, Specialization, and "Other" factors.  Nevertheless, the ALJ discussed the factors

17  relevant to the case.  As discussed above, the ALJ invoked the "most important" Supportability and

18  Consistency factors in his analysis.  AR 28.  Additionally, as to the Specialization factor, the ALJ

19  noted Ms. Villanueva's LMFT credentials in assessing his opinion.  *Id*.  In her motion, Plaintiff notes

20  that "[t]hese doctors and therapists have extensive psychiatric experience," but does not provide

21  further detail regarding Ms. Villanueva's experience or specialization.  (Doc. 10 at 21.)  As to the

22  "Other" factors, there is no indication in the record that Ms. Villanueva was familiar with the other

23  evidence in the claim or had an understanding of Social Security policies and evidentiary

24  requirements.  The ALJ therefore properly considered the 20 C.F.R. § 404.1520c(c) factors in

25  evaluating Ms. Villanueva's opinion.

26          The Court therefore concludes that the ALJ did not err in discounting the opinions of Dr.

27  Edwards, Ms. Black, Dr. Reina, and Ms. Villanueva.

28          ///

**C.  Plaintiff's Subjective Complaints**

Plaintiff next contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence.  (Doc. 10 at 21.)  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis.  *Garrison*, 759 F.3d at 1014; *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  AR 21.  However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record.  *Id*.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

In assessing Plaintiff's statements and subjective complaints, the ALJ noted:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision… Moreover, the record supports that the claimant's mental symptoms can be largely controlled with medication and therapy (Exhibits 1F at 10; 2F at 11; 3F at 3; 5F at 89, 179, 246; 7F at 62, 70, 73, 79; 12F at 14-15, 27, 80).  As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because she is not as restricted as she claims. The undersigned must assess the consistency of the claimant's statements about the intensity, persistence, and limiting effects of symptoms with the objective medical evidence and the other evidence of record. Despite her combination of alleged impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted to activities of daily living including light housecleaning, performing self-care activities such as dressing and

bathing, socializing with others, driving, managing her finances, doing volunteer work and interacting with the community and displaying sufficient concentration and attention to paint rocks, create and sell artwork (Exhibits 3F at 4, 5; 5F at 67, 222; 7F at 74). Some of the physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds the claimant's ability to participate in such activities is inconsistent with her allegations of functional limitations.

AR 21, 25.

First, the ALJ noted the inconsistences between Plaintiff's symptom statements and objective medical evidence in the record. *Id.* Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In discussing the restrictions in the residual functional capacity, the ALJ pointed to the objective medical evidence in the record, noting that "[m]ental status examinations have routinely shown the claimant to be cooperative, alert and fully oriented, with appropriate dress and hygiene, and normal psychomotor activity, mood, affect, speech, perception, thought process and thought content." AR 21, 25, 406-407, 422, 425, 433, 489-490, 566-67, 588-589, 744-745, 858-860, 892-93, 897-942, 1379, 1453. The ALJ further summarized that, during treatment, Plaintiff "has been found to have adequate judgment and insight, grossly intact immediate, recent and remote memory, normal attention and sufficient fund of knowledge and abstraction ability." AR 25, 430, 490, 745, 893. Accordingly, the ALJ properly considered medical evidence as one factor in discounting Plaintiff's testimony.

Second, the ALJ found that Plaintiff's subjective symptoms and difficulties were inconsistent with her relatively intact daily activities. AR 25. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds* (identifying two-step analysis in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of symptoms). Even where a plaintiff's activities suggest some difficulty functioning, they may be

grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id.* at 1113.

Here, the ALJ discussed treatment notes and stated that Plaintiff's daily activities included "light housecleaning, performing self-care activities such as dressing and bathing, socializing with others, driving, managing her finances, doing volunteer work and interacting with the community and displaying sufficient concentration and attention to paint rocks, create and sell artwork."  AR 25, 488-489 (Plaintiff noted that she rarely does household chores or errands, does a little driving and cooking, dresses and bathes herself, is able to move about alone, and handles her own financial affairs), 566-567 (Plaintiff took up hobby of painting rocks and connected more with her roommate), 720-721 (Plaintiff met with her best friend, volunteered at a play, and made cough syrup for her best friend), 934 (Plaintiff "reports selling her artwork, using positive self talk").  The Court therefore finds the ALJ appropriately discounted Plaintiff's subjective complaints given Plaintiff's demonstrated activities.

Third, the ALJ properly considered that the "the record supports that the claimant's mental symptoms can be largely controlled with medication and therapy."  AR 25.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983)).  Here, the ALJ cited treatment reports noting patient's positive responses to medication and other forms of treatment.  AR 25, 399 (noting medications including Effexor and Prozac and that Plaintiff reported "no longer feeling suicidal, and feels like she is stabilized not [sic] she has been on medications and resting in the emergency department. She is requesting discharge home."); 420 (Plaintiff is doing "well with Lamictal/Effexor" and reported "this is the best she has felt in a long time… Denies any severe depression. She is looking forward to returning back to work."); 487 (Plaintiff "is adamant that she is not suicidal and feeling much better"); 588 (Plaintiff returning to monitor response to psychotropic medication, was "upbeat but not hypomanic" and had normal thought process and speech); 678 (Plaintiff "reports that she 'was doing pretty well, the new meds regime is helping, believes will keep Wellbutrin to 2 tabs q day.'"); 744-745

(noting Plaintiff's labile mood, Plaintiff "appears to be less anxious, Lucid, and more connected w/emotions, with the goal of 'letting go of the hurt & go forward.'"  Also noting that Plaintiff feels she is at a "7/10" in her progress and feels "more empowered, feeling less depressed AND NOT suicidal."); 922 (Plaintiff participating in relaxation, breathing, guided imagery and other exercises); 930 (Plaintiff "successfully participated in EMDR, reports 0 distress from an 8. Clt reported feeling 'good.'"); 933 (Plaintiff stated that she was feeling better, would use CBT skills to address issues); 939 (Plaintiff "is able to identify coping skills to reduce negative emotions and fear, meditating, painting, gratitude list and being grateful that not only does she have the tools but uses them."); 1388-1389 (Plaintiff "reports that since increasing venlafaxine dose to 225 mg QD, her symptoms of depression have lessened. She is managing the anxiety associated to her environmental stresses adequately."); 1401 (Bipolar II Disorder is "Stable with current medication regimen of a Abilify 2 mg daily. Effexor ER 225 mg daily."); 1454 (Plaintiff "reports that current medicine regime appears to be helping, states that the new medication/Seroquel helps with sleep.").  Given that the ALJ assessed the record to determine whether Plaintiff's impairment was effectively controlled, the ALJ properly used Plaintiff's treatment as a basis to discount Plaintiff's symptom testimony.

Plaintiff argues that the ALJ improperly "cherry picked" from medical evidence to discount Plaintiff's subjective testimony.  (Doc. 10 at 22.)  The Ninth Circuit has noted that it is "improper for the ALJ to discount [a claimant's] testimony by 'cherry pick[ing]' the absence of certain symptoms from the report." *Diedrich*, 874 F.3d at 642.  The Ninth Circuit further cautioned that, "[w]hile ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018.  However, the ALJ here discussed Plaintiff's treatment history in depth from November 2018 to October 2021.  AR 21-25.  The ALJ further cites to relevant treatment notes from the during the alleged impairment period.  AR 25, 406-407, 422, 425, 433, 489-490, 566-67, 588-89, 744-45, 858-860, 892-93, 897-942, 1379, 1453.  By including both the larger treatment history and individual relevant treatment notes, the ALJ demonstrated that he did not rely on unrepresentative data points, and thus satisfied the clear and convincing standard.

The Court therefore concludes that the ALJ did not err in discounting Plaintiff's subjective complaints.

### D.  Incorrect Age and Medical-Vocational Guidelines

Plaintiff argues that the ALJ committed reversible error by insufficiently accounting for Plaintiff's change in age category during the relevant period.  (Doc. 10 at 26.)  Plaintiff "was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563)."  AR 29.  By the time of the second hearing, Plaintiff was 56 and in the "advanced age" category.  AR 52-53.  Defendant concedes that the ALJ did not acknowledge that Plaintiff had changed age categories during the relevant period but contends that any error is harmless because Plaintiff's change in age categories would not change the outcome of the decision.  (Doc. 11 at 25.)

The Commissioner may support a finding of no disability by showing "that the claimant can perform some other work that exists in significant numbers in the national economy" by reference to the Medical–Vocational Guidelines.  *Tackett v. Apfel*, 180 F.3d 1094, 1100-1101 (9th Cir. 1999); *Valentin v. Saul*, No. 2:18-cv-02394-AC, 2020 WL 91997, at *4 (E.D. Cal. Jan. 8, 2020).  The Medical-Vocational Guidelines (the "Grids") consist of a matrix of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983) (footnotes omitted).  Within the Grids, an "impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse."  20 C.F.R. § Pt. 404, Subpt. P, App. 2 at 204.00.  Courts have upheld ALJs' reliance on section 204.00 of the Grids to find claimants not disabled, noting that "where a claimant is limited to simple, repetitive tasks, but otherwise retains the ability to perform a full range of work at all exertional levels, the Grids accurately and completely describe the claimant's particular impairments."  *McLain v. Astrue*, No. SACV 10-1108 JC, 2011 WL 2174895, at *3 (C.D. Cal. June 3, 2011); *see also Perez v. Colvin*, No. CV 15-807 JC, 2015 WL 7853699, at *8 (C.D. Cal. Dec. 2, 2015) ("Where, like

here, a claimant is limited to unskilled work, but otherwise retains the ability to perform a full range of work at all exertional levels, the Grids alone accurately and completely account for the plaintiff's particular impairments… Therefore, here, the ALJ properly found plaintiff not disabled under the framework of Section 204.00."); *Young v. Comm'r of Soc. Sec.*, No. 2:11-cv-1283-CMK-TEM, 2012 WL 3249506, at *14 (E.D. Cal. Aug. 7, 2012), aff'd, 594 F. App'x 914 (9th Cir. 2014) (ALJ's reasoning and findings supported by substantial evidence where the ALJ relied on Grids section 204.00 to find a plaintiff not disabled who had nonexertional limitations and was able to perform work at all exertional levels).

Here, the ALJ found "that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out simple, routine and repetitive tasks using judgment limited to simple work related decisions. She can occasionally interact with the public and coworkers." AR 20. The ALJ then stated that a "finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines." AR 30.  Plaintiff argues that she should have been considered to have had a light residual functional capacity, and thus Grids section 202.06 should have been applied.  (Doc. 10 at 26.)  This ignores the ALJ's finding that Plaintiff could perform a full range of work at all exertional levels and was not considered to have a light RFC.  AR 20.  Given the ALJ's findings of Plaintiff's ability to perform a full range of work at all exertional levels, a change in age category to advanced age would not have impacted the ultimate disability conclusion because Grids section 204.00 would still apply.  The ALJ's error in discussing Plaintiff's age category is therefore harmless.  *Stout*, 454 F.3d at 1055 (Ninth Circuit has "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.")

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Lutricia Thompson.

IT IS SO ORDERED.

Dated:   __May 3, 2023__                    ____/s/ Barbara A. McAuliffe____
                                           UNITED STATES MAGISTRATE JUDGE